United States Courts
Southern District of Texas
FILED
January 21, 2022
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | Criminal No. **4:22-cr-34** |
| v. | § § | |
| FLORENCE BABALOLA | § § | |
| Defendant. | § § | |

## INFORMATION

The United States Attorney for the Southern District of Texas charges:

### General Allegations

At all times material to this Information, unless otherwise specified:

1. The Medicare Program (Medicare) was a federal healthcare program providing benefits to individuals who were the age of 65, or older, or disabled. Medicare was administered by the United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services (CMS). Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3. Medicare was subdivided into different parts. "Part A" of the Medicare program covered certain eligible home-healthcare costs for medical services provided by a home healthcare agency ("HHA") to beneficiaries requiring home-health services because of an illness or disability causing them to be homebound. Payments for home-healthcare services were typically made directly to a HHA based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the

beneficiaries. "Part B" of the Medicare program covered the cost of physicians' services, outpatient care, and other ancillary services not covered by Part A.

4. Physicians, clinics, and other healthcare providers, including HHAs, that provided services to Medicare beneficiaries, were able to apply for and obtain a Medicare provider number. A healthcare provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other healthcare provider that ordered the services.

5. The Medicare program paid for home healthcare services only if the patient qualified for home healthcare benefits. A patient qualified for home healthcare benefits only if:

    a. the patient was confined to the home, also referred to as homebound;

    b. the patient was under the care of a physician who specifically determined there was a need for home healthcare and established the Plan of Care (POC); and

    c. the determining physician signed a certification statement specifying that:

        i. the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy;

        ii. the beneficiary was confined to the home;

        iii. a POC for furnishing services was established and periodically reviewed; and

        iv. the services were furnished while the beneficiary was under the care of the physician who established the POC.

6. Medicare regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the HHA.

7. These medical records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the HHA.

8. Assurance Health Care Services Inc ("Assurance") was a Texas corporation doing business in Houston, Texas. Assurance purportedly provided home health services to Medicare beneficiaries from in or around August 2016 to in and around February 2017.

9. Defendant **FLORENCE BABALOLA**, a resident of Harris County, Texas, is a Registered Nurse licensed to practice in the State of Texas. **BABALOLA** owned and operated Assurance from in or around August 2016 through in or around February 2017.

10. Clinic 1 was an undercover clinic operating in Houston, Texas.

11. Physician A was associated with Clinic 1.

12. Clinical operator worked at Clinic 1.

**COUNT 1**
**Conspiracy to Defraud the United States and to**
**Pay and Receive Health Care Kickbacks**
**(18 U.S.C. § 371)**

13. Paragraphs 1 through 12 of this Information are realleged and incorporated by reference as if fully set forth herein.

14. From in and around August 2016 through in or around February 2017, the exact dates being unknown, in the Houston Division of the Southern District of Texas, and elsewhere, the Defendant,

**FLORENCE BABALOLA**

3

did knowingly and willfully combine, conspire, confederate and agree with her coconspirators, known and unknown, to commit certain offenses against the United States, that is,

    a.    to defraud the United States by impairing, impeding, obstructing and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program; and to commit certain offenses against the United States, that is:

    b.    to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare; and

    c.    to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, that is, Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and

ordering of any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare.

### Purpose of the Conspiracy

15.  It was a purpose of the conspiracy for the Defendant **FLORENCE BABALOLA**, and her co-conspirators to unlawfully enrich themselves by paying kickbacks and bribes in exchange for the referral of Medicare beneficiaries for whom Assurance submitted claims to Medicare.

### Manner and Means of the Conspiracy

The manner and means by which the Defendant **FLORENCE BABALOLA** and her co-conspirators sought to accomplish the purpose and objects of the conspiracy included, among other things, the following:

16.  Defendant **FLORENCE BABALOLA** maintained a Medicare provider number for Assurance that the Defendant used to submit and cause to be submitted claims to Medicare for home health services that were not medically necessary, not provided, or both.

17.  Defendant **FLORENCE BABALOLA** and her coconspirators, known and unknown, paid and caused the payment of kickbacks to Clinic 1 in exchange for referring Medicare beneficiaries to Assurance for home health services.

18.  Clinical operator provided **FLORENCE BABALOLA** with home health paperwork signed by Physician A. In exchange for Physician A's signature on medically unnecessary home health services for Medicare beneficiaries for whom Assurance submitted claims to Medicare, **FLORENCE BABALOLA** and her coconspirators, known and unknown, paid and caused the payment of kickbacks to Clinic-1.

19.     **FLORENCE BABALOLA** and her co-conspirators, known and unknown, falsified and caused to be falsified patient files to make it appear that services for which Assurance billed Medicare were medically necessary, actually provided, and met Medicare's criteria for reimbursement.

20.     From in and around August 2016 to in and around February 2017, **FLORENCE BABALOLA** and her conspirators, known and unknown to the Grand Jury, submitted or caused the submission of claims to Medicare for approximately $63,277 for home health services that were predicated on illegal kickbacks to Clinic 1 and for patients certified without regard to medical necessity. Medicare paid Defendant approximately $51,443 on those claims, which was transferred electronically into an account owned by Defendant **FLORENCE BABALOLA**.

All in violation of Title 18, United States Code, Section 371.

## Overt Acts

21.     In furtherance of the conspiracy, and to accomplish its objects and purposes, the conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas, the following overt acts:

   a.   On or about August 30, 2016, Defendant **FLORENCE BABALOLA** paid or caused the payment of approximately $320 to Clinic 1 in exchange for Physician A's signature on home health paperwork for Assurance's Medicare beneficiaries.

   b.   On or about December 23, 2016, Defendant **FLORENCE BABALOLA** paid or caused the payment of approximately $350 to Clinic 1 in exchange for Physician A's signature on home health paperwork for Assurance's Medicare beneficiaries.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF CRIMINAL FORFEITURE

## (18 U.S.C. § 982(a)(7))

Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to the Defendant **FLORENCE BABALOLA** that, upon conviction all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense is subject to forfeiture.

### Money Judgment

Defendant **FLORENCE BABALOLA** is notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, which is at least approximately $51,443.

### Substitute Assets

Defendant **FLORENCE BABALOLA** is notified that in the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the Defendant up to the total value of the property subject to forfeiture.

JENNIFER B. LOWERY
UNITED STATES ATTORNEY

*Kathryn Olson*
KATHRYN OLSON
Special Assistant United States Attorney
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
Tel.: (713) 567-9146
E-mail: Kathryn.Olson@usdoj.gov